UNITED STATES DISTRICT COURT
FILED
SEP - 1 2023
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

CHRUNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHRISTINE Z.,

                Plaintiff,

     -v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

                     21-CV-00968-MJR
                     DECISION AND ORDER

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case.  (Dkt. No. 15)

Plaintiff Christine Z.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Disability Insurance Benefits ("DIB") pursuant to the Social Security Act (the "Act").  Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.  For the following reasons, Plaintiff's motion (Dkt. No. 13) is granted, and defendant's motion (Dkt. No. 14) is denied.

_____

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

**BACKGROUND**[2]

Plaintiff, who worked as a supervisor at General Motors for over 20 years, filed for DIB on July 15, 2019, with an alleged onset date of January 28, 2019. (Administrative Transcript ["Tr."] 184-90).   The application was initially denied on October 8, 2019, and upon reconsideration on December 2, 2019.  (Tr. 106-17, 119-30). Plaintiff filed a request for an administrative hearing with good cause for late filing.  (Tr. 131-83). On September 2, 2020, Administrative Law Judge ("ALJ") Bryce Baird held a telephone hearing.  (Tr. 32-80).  Plaintiff participated via telephone, with counsel.  A vocational expert also testified at the hearing.  The ALJ issued an unfavorable decision on October 9, 2020.  (Tr. 15-31). On July 13, 2021, the Appeals Council denied Plaintiff's request for review.  (Tr. 1-7). This action followed.

**DISCUSSION**

I.    _Scope of Judicial Review_

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," _Richardson v. Perales_, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts."  _Smith v._

---

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

*Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   <u>*Standards for Determining "Disability" Under the Act*</u>

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The

Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he

or she is not disabled regardless of any other factors or considerations.  *Id.* §§404.1520(c), 416.920(c).  Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions:  first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1.  *Id.* §§404.1520(d), 416.920(d).  If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience.  *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five.   Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record.  *Id.* §§404.1520(e), 416.920(e).  RFC "is the most [the claimant] can still do despite [his or her] limitations."  *Id.* §§404.1545(a)(1), 416.945(a)(1).  The Commissioner's assessment of the claimant's RFC is then applied at steps four and five.   At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work."  *Id.* §§404.1520(f), 416.920(f).  If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act.  *Id.* §§404.1520(f), 416.920(f).  Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work."   *Id.*

§§404.1520(g)(1), 416.920(g)(1).  If the claimant can adjust to other work, he or she is not disabled.  *Id.* §§404.1520(g)(1), 416.920(g)(1).  If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act.  *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform."  *Carroll*, 705 F.2d at 642.

III.    *The ALJ's Decision*

At the first step of the sequential evaluation, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 28, 2019, the alleged onset date. (Tr. 20-21).  Next, at step two, the ALJ determined that Plaintiff's has the following severe impairments: (1) left eye retinal detachment with surgical repair; (2) cataract repair left eye; and (3) right eye amblyopia (also referred to as "lazy eye"). (Tr. 21).  Next, at step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 22). Before proceeding to step four of the sequential evaluation, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels except that she is limited to work that (1) does not involve exposure to hazards, such as unprotected heights or moving machinery; (2) does not entail direct exposure to bright or flashing lights; (3) requires visual acuity allowing Plaintiff to read ordinary book or newspaper print; but not work that requires fine visual

- 6 -

acuity that would require Plaintiff to read smaller print than used in an ordinary book or newspaper print. (Tr. 22-25).

At step four of the sequential evaluation, the ALJ found that Plaintiff can perform her past relevant work. (Tr. 25-26). Additionally, in the alternative, at step five of the sequential evaluation, the ALJ determined that Plaintiff can perform other jobs that exist in significant numbers in the national economy. (Tr. 26-27). Accordingly, the ALJ found that Plaintiff is not disabled under the Act. (Tr. 27).

IV.   *Plaintiff's Challenge*

Plaintiff argues, *inter alia*, that the case must be remanded because the ALJ inadequately developed the record concerning Plaintiff's visual limitations. The Court agrees.

At the center of this case is whether Plaintiff's visual limitations render her disabled within the meaning of the Act. The ALJ found that Plaintiff had the following severe impairments: (1) left eye retinal detachment with surgical repair; (2) cataract repair left eye; and (3) right eye amblyopia or "lazy eye." (Tr. 21). However, at no time did the Commissioner or the ALJ order a consultative exam by an ophthalmologist, thus creating an evidentiary gap in the record. For the reasons stated below, the ALJ should have taken steps to develop more fully the record.

In determining Plaintiff's RFC, the ALJ considered the medical opinion of one of Plaintiff's treating ophthalmologists, Dr. Martin Boscarino. On November 14, 2019, Dr. Boscarino completed a multi-page sent to him by the SSA. (Tr. 535-37). He stated that his treating diagnoses are: (1) retinal detachment of the left eye; and (2) amblyopia of the right eye (Tr. 535). He wrote that the Plaintiff has "stable" vision (Tr. 535). Somewhat

confusingly and vague, Dr. Boscarino checked the box that he "cannot provide a medical opinion regarding this individual's ability to do work-related activities," while at the same time checking the boxes that the Plaintiff has no visual or exertional limitations from her eye impairments. (Tr. 537).

The ALJ discounted Dr. Boscarino's opinion. He stated that Dr. Boscarino's opinion that Plaintiff would have "essentially no restrictions" is only partially persuasive because "some limitations relative to the claimant's environment are warranted in consideration of her history of visual impairments." (Tr. 25). In other words, the ALJ rejected Dr. Boscarino's opinion that Plaintiff has no visual limitations.

The ALJ also considered the opinions of consultative examiners, Dr. J. Meyer and Dr. V. Barnos. On October 3, 2019, Dr. Meyer, who is apparently a pediatrician, reviewed the contents of the SSA disability file at the time (but did not examine the Plaintiff) and then completed a Physical RFC Assessment, (Tr. 86-87). Dr. Meyer opined that the Plaintiff is "limited" in both near and far acuity in the right eye. (Tr. 86). Dr. Meyer opined no limitations in the left eye. (Tr. 86).

On November 29, 2019, Dr. Baronos, who is an internist, reviewed the contents of the SSA disability file at the time (but did not examine the Plaintiff) and then completed a Physical RFC Assessment. (Tr. 97-99). Like Dr. Meyer, Dr. Baronos opined that the Plaintiff is "limited" in both near and far acuity in the right eye, but opined no limitations in the left eye. (Tr. 98).

The ALJ found the opinions of Dr. Meyer and Dr. Baronos persuasive. (Tr. 25). The ALJ stated that "these opinions are consistent with one another, and supported by the record, which demonstrates the claimant has a history of visual impairments." (Tr. 25).

The Court finds the ALJ's reliance on the opinions of Dr. Meyer and Dr. Barnos problematic for several reasons.  First, it is unclear to the Court why the Commissioner would ask for a consultative examination from a pediatrician and an internist in a case involving an adult with severe vision issues.[3]  This case seems to cry out for a consultative or physical examination by an ophthalmologist.

Second, Dr. Meyer and Dr. Baronos both opined that the Plaintiff is "limited" in both near and far acuity in the right eye, (Tr. 86), but provided no function-by-function assessment, rendering their opinions vague and of not much worth, especially considering that neither is an ophthalmologist.

Third, Dr. Meyer and Dr. Baronos found no limitations in the left eye (Tr. 86). This is puzzling because the Plaintiff had two recent surgeries on her left eye (Tr. 427, 434, 440), and the ALJ found that both the left eye retinal detachment with surgical repair and the left eye cataract repair were severe impairments. (Tr. 21). By definition, under the Commissioner's regulations at 20 C.F.R. § 404.1520(c), a severe impairment is "any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities."  Thus, the consultative examiners' opinions that Plaintiff has no left eye limitations, without a functional analysis, would arguably not be substantial evidence.

The ALJ also considered the opinion of Plaintiff's other treating ophthalmologist, Dr. Charles J. Fetterman.  On September 3, 2020, Dr. Fetterman wrote a supportive letter,

---

[3] The only evidence in the record that the Court could locate as to the specialties of Dr. Meyer and Dr. Barnos is in the signature blocks of their respective opinions.  The ALJ does not identify their specialties in his decision.  The Plaintiff asserts in her motion papers that based on the signature blocks on their opinions, Dr. Meyer's specialty is pediatrics and Dr. Barnos's specialty is internal medicine.  See Dkt. No. 13-1, at 6-7. The Commissioner does not dispute this assertion. There is nothing in the ALJ's decision indicating that he was aware of Dr. Meyer's and Dr. Barnos's specialties.

stating that he originally restricted the Plaintiff in October 2018 to avoid the plant floor where she worked because it contained bright or artificial lights. (Tr. 286).  The Plaintiff complained of eye strain and headaches due to excessive computer work within about 30 minutes of exposure. (Tr. 286). The artificial lighting would also make her feel unstable on her feet, almost like a funhouse effect. (Tr. 286).  Plaintiff was placed in a different work environment with her employer, no longer working on the plant floor, but instead was working in an office setting with computers. (Tr. 286).  He indicated that Plaintiff returned to his office in January 2019 complaining of eye strain and headaches due to the light from the computer screen.  (Tr. 286). She was also undergoing chemotherapy and on medication that caused her to complain of decreased vision.   (Tr. 286). Dr. Fetterman opined that "[a]fter examining the patient and reviewing her symptoms, it was advised that she discontinue work."  (Tr. 286). Dr. Fetterman concluded the letter by writing that "[i]f I can be of any further help, please contact my office[.]"  (Tr. 286).

Dr. Fetterman's opinion was submitted after the hearing, but formally admitted into the administrative record by the ALJ.  (Tr. 18).  The ALJ did not find persuasive Dr. Fetterman's opinion that Plaintiff should "discontinue work."  (Tr. 25). The ALJ stated that this is a "conclusory statement relative to whether or not the claimant should continue working" and is "not expressed in functional terms."  (Tr. 25).  Even though Dr. Fetterman, Plaintiff's treating physician, opined that her visual limitations were disabling and prevented her from working, the ALJ rejected this opinion without re-contacting Dr. Fetterman for additional information or clarification, or seeking a further opinion by a consultative ophthalmologist or other medical expert.

In sum, since the ALJ rejected the opinions of both treating ophthalmologists—finding one too restrictive and the other not restrictive enough--and because the opinions of the non-ophthalmologist consultative examiners are problematic for the reasons stated above, there exists an evidentiary gap the record.   The ALJ had an affirmative duty to address this gap, and to develop the record. *Arnold v. Comm'r of Soc. Sec.*, No. 17-CV-987S, 2019 WL 2521179, at *8 (W.D.N.Y. June 19, 2019); *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999) (*quoting Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)).   To do this, an ALJ is authorized to recontact a treating physician or hospital, or to order a consultative examination from an SSA examiner or a medical expert. *See Covey v. Colvin*, 204 F. Supp. 3d 497, 507 (W.D.N.Y. 2016) (To fill a gap in the record, the ALJ "could have requested addition information from the treating physician [...]; he could have obtained an SSA consultative examination; and/or he could have requested an opinion from a medical expert.").   Accordingly, the case is remanded for further proceedings. *See Tavion T. v. Comm'r of Soc. Sec.*, 20-cv-514-MJR, 2021 WL 1559243, *4 (W.D.N.Y. Apr. 21, 2021).[4]

---

[4] Dr. Fetterman submitted a second opinion to the Appeals Council, which the ALJ never saw or evaluated.  That letter should also be considered on remand.

**CONCLUSION**

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 13) is granted and defendant's motion for judgment on the pleadings (Dkt. No.14) is denied.  The case is remanded for further administrative proceedings.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:      September 1, 2023
              Buffalo, New York

                                 MICHAEL J. ROEMER
                                 United States Magistrate Judge